[No. 5746.   Decided December 5, 1905.]

ALBERTINA UNZELMAN *et al., Appellants,* v. THE CITY OF
SNOHOMISH *et al., Respondents.*[1]

ADVERSE POSSESSION OF STREETS — ESTOPPEL — COMMUNITY PROP-
ERTY—PETITION TO VACATE STREETS SIGNED BY HUSBAND.   Where the
title is taken to platted real estate in the name of the wife, and the
husband petitioned the city council for the vacation of certain dedi-
cated streets occupied by them, and running through the premises,
which petition was denied, the property being presumably community
property, the parties must be held to have recognized the rights of
the city in and to the streets and cannot invoke the equitable doc-
trine of estoppel against the city's right to assert dominion over the
streets, by ordering the removal of obstructions and permanent im-
provements thereon.

SAME—HOSTILE CHARACTER OF POSSESSION.   Adverse possession of
streets as against a city cannot be claimed by owners who, after
platting the same, had fenced up and used the same for a period of
ten years, where they at all times had recognized the rights of the
city and had leased portions with the understanding that the lessees
should respect the rights of the city therein.

Appeal from a judgment of the superior court for Sno-
homish county, Denney, J., entered January 7, 1905, upon
findings in favor of the defendant, after a trial on the merits,
quieting its title to certain streets and alleys.   Affirmed.

*Dailey & Clay* and *Frank D. Lewis,* for appellants.
*John W. Miller,* for respondents.

HADLEY, J.—This is an action to quiet title to land, and
an injunction is asked against the city of Snohomish to pre-
vent it from asserting any dominion over the disputed terri-
tory, which it claims constitutes public streets and alleys in
said city.   The complaint alleges that in 1891 the land was
duly platted by the then owner into lots, blocks, streets, and
alleys, as "Mrs. Hogan's Second Addition to Snohomish;"
that it was then inclosed by a fence, was nearly all under

1Reported in 82 Pac. 911

cultivation, and that the owner resided thereon; that upon the map of said plat was a strip marked as "Third street," and another marked as "Cypress street," together with other strips marked as streets and alleys; that no part of said Third or Cypress streets was ever opened or prepared for public use, or traveled by the public, and that the territory thereof has been wholly unoccupied except by its successive owners; that after the filing of the plat, the then owner cultivated the land and resided upon it until it was sold and conveyed by her; that in February, 1902, the plaintiffs purchased from one McGuinness and wife what is known as block 1, and the east half of block 6, in said addition, all of which was then inclosed by a fence as one tract, and that it was purchased and conveyed with the understanding that it was one tract; that the land was so actually held and occupied by said owners, who were grantors of the plaintiffs in direct line, and was openly, notoriously, continuously and adversely so held and occupied by all the plaintiffs' grantors from the time it was platted as aforesaid; that the city of Snohomish has not, during all of said years prior to the 16th day of March, 1904, set up or claimed any right therein, but that from said time it has asserted its right to cause the fences and property of plaintiffs to be removed from within the limits of what was marked on said plat as Third street, Cypress street, and alleys, and that it is now threatening to remove said property; that permanent improvements have been made upon said streets and lands with the full knowledge of said city, and if at any time the latter had the right to open up the streets, such right has been lost and barred by estoppel, and by adverse possession for more than eleven years.

The city was temporarily enjoined pending the action, and it thereupon answered the complaint, alleging among other things that, in January, 1891, before Mrs. Hogan filed her said plat for record in the auditor's office of Snohomish county, she duly presented the same to the city council of

said city for its acceptance and approval, in compliance with an ordinance of the city regulating the manner and form of making, approving, and filing such plats, and that the city duly approved and accepted the same; that in said plat she expressly dedicated to the public for the public use forever all of the streets and alleys marked and designated thereon; that ever since said time the streets and alleys above mentioned have been public streets and highways; that while they were in the possession of said city as such, on or about December 1, 1903, the plaintiffs wrongfully and unlawfully entered thereon to the exclusion of public traffic; that the title to the lots and blocks remained in the owner who platted them, until the date of her death in the year 1900; that she always recognized the rights of the city in said streets and alleys, and never at any time claimed to hold any part thereof adversely to the rights of the city; that the plaintiffs, on April 1, 1902, after purchasing said lots and blocks, presented to the city council of said city a petition for the vacation of said streets and alleys, which petition, after a hearing, was denied; that the city never opened said streets and alleys, for the reason that there was no public necessity therefor, in the judgment of the city council, until within the past two years, when the growth of the city demanded it, and that public necessity now requires it.

Upon substantially the above issues, the cause was tried by the court without a jury, and the court made and entered findings of facts and conclusions of law. The material facts were found substantially as alleged in the answer, and as above shown. It was particularly found that public necessity requires the use of the streets and alleys for sewers, drainage, and sanitary purposes, as the only practical outlet for sewers and drainage of said plat into Pillchuck creek, on the east boundary thereof. As a conclusion of law, the court found that the city was entitled to a decree quieting its title and rights in and to said streets and alleys, and award-

ing it the possession and restitution of the same. Such a decree was entered, and the plaintiffs have appealed.

Appellants assign errors upon the court's findings. We think the material ones are sufficiently supported by the evidence, and it would not be profitable here to discuss the evidence with relation to all the criticized findings. It is insisted that the city is equitably estopped to assert any rights in or dominion over said streets and alleys. The court found that in April, 1902, the appellants themselves, after purchasing the lots above mentioned, petitioned the city council to vacate these streets and alleys; that their petition was denied, and that this was before they made any of the improvements which they claim to have placed within the limits of the designated streets or alleys. Objection is made to this finding. The evidence shows that the petition was signed by appellant F. H. Unzelman, and was filed with the city clerk April 1, 1902. Minutes of the proceedings of the city council of May 6, 1902, show that the petition was laid upon the table indefinitely. Appellant Albertina Unzelman did not sign the petition, and she was named as grantee in the deed upon which appellants base their asserted rights herein. It is therefore claimed that she did not ask for the vacation. The appellants were, however, husband and wife when the conveyance was made, and have since continued to be such. The complaint alleges that both appellants purchased the property, and it must therefore be presumptively community property. The husband has the management and control of the community real property. Bal. Code, § 4491. The petition for vacation was incidental to such management and control, and it was presumptively in behalf of the community, particularly so as it does not appear to have been without the wife's knowledge or consent. The finding was therefore correct, and inasmuch as appellants thus petitioned the city for the vacation of the streets soon after they purchased the property, they thereby recognized that the city did claim

rights in the streets, and that it was then asserting dominion over them. They afterwards proceeded to erect in the streets improvements of a permanent nature. They are not, therefore, in position to invoke equitable estoppel against the city. They are rather in the position of wrongdoers who have knowingly and wilfully undertaken to obstruct the streets. Courts of equity will not afford relief by way of estoppel under such circumstances. *Johnson v. Maxwell*, 2 Wash. 482, 27 Pac. 1071.

"In addition to this consideration may be noted another influential one already suggested in a different connection, and that is, the private use of the public way was wrong in the beginning and wrong each day of its continuance, and it is a strange perversion of principle to declare that one who bases his claim on an original and continued wrong may successfully appeal to equity to sanction and establish such a claim. It is, at all events, a great stretch of the doctrine of estoppel and a wide departure from the rule laid down by the earlier decisions and confirmed by the modern authorities." Elliott, Roads and Streets (2d ed.), § 884.

See, also, *Ralston v. Weston*, 46 W. Va. 544, 33 S. E. 326, 76 Am. St. 834.

It is contended by appellants that the city has lost its rights in the streets by adverse possession of appellants and their grantors. The court found that adverse possession was not shown by a preponderance of the evidence, and that it is not a fact that the streets were held adversely to the city for a period of ten years or more. We think this finding was amply justified by the evidence. Testimony in the record satisfies us that Mrs. Hogan who platted the land always recognized the rights of the city in these streets up to the date of her death in the year 1900. She leased portions of the addition with the express understanding that her lessees should respect the rights and demands of the city with reference to the streets. She owned a portion of the lots now held by appellants until the time of her death. The facts shown in the case would not establish title in appellants by

adverse possession, under even ordinary circumstances and between individuals. It is therefore unnecessary that we shall discuss the further question argued by respondents, that in no event can title be acquired in that manner in lands which have been dedicated for public streets. Under the facts established in the case, that question is not involved, and we have therefore not passed upon it.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, RUDKIN, CROW, DUNBAR, and ROOT, JJ., concur.